(No. 75412.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LARRY MACK, Appellee.

*Opinion filed October 19, 1995.—Rehearing denied December 4, 1995.*

BILANDIC, C.J., joined by MILLER and HEIPLE, JJ., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen and Arleen Anderson, Assistant Attorneys General, of Chicago, and Sally L. Dilgart, Renee G. Goldfarb, Marie Quinlivan Czech and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

John L. Stainthorp, of Chicago, for appellee.

Paul A. Logli, of Rockford, for *amicus curiae* Illinois State's Attorneys Association.

JUSTICE NICKELS delivered the opinion of the court:

The State appeals from an order of the circuit court of Cook County granting the petition of defendant, Larry Mack, for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*). The circuit court vacated defendant's death sentence and ordered a new sentencing hearing on the basis that the sentencing jury failed to return a legally sufficient verdict finding the existence of an aggravating factor making defendant eligible for the death penalty. Because the post-conviction proceedings involve a judgment imposing the death penalty, the State's appeal lies directly to this court. (134 Ill. 2d R. 651.) For the reasons set forth below, we affirm.

## BACKGROUND

Defendant was found guilty of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)) and armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2) following a bench trial in the circuit court of Cook County. After a bifurcated death penalty hearing conducted before a jury, defendant was sentenced to death. The following evidence was adduced at trial and sentencing. According to an eyewitness (whose testimony was partially corroborated by photographs from security cameras) on November 23, 1979, defendant entered a bank located at 500 West 119th Street in Chicago and walked up to the bank's security guard, Joseph Kolar. Defendant pointed a gun at Kolar, and when Kolar tried to push the gun away defendant fired a shot, which struck Kolar's right arm. At that point, defendant grabbed Kolar by the back of his

shirt collar, walked him over to a window, and pushed him to the ground. Defendant then straddled Kolar and shot him in the chest. Kolar died as a result of the second gunshot. While defendant was straddling Kolar, two accomplices entered the bank, climbed over a barrier to the teller cages, and stuffed money into bags. All three were apprehended by Chicago police officers immediately after they left the bank.

After defendant was found guilty at the bench trial, a jury was empaneled for a bifurcated death penalty hearing. At the first stage of the hearing, the State sought to establish defendant's eligibility for the death penalty solely on the basis of the statutory aggravating factor set forth in section 9—1(b)(6) of the Criminal Code of 1961, which provided as follows during the relevant time frame:

"(b) Aggravating Factors. A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of murder may be sentenced to death if:

* * *

6. the murdered individual was killed in the course of another felony if:

(a) the murdered individual was actually killed by the defendant and not by another party to the crime or simply as a consequence of the crime; and

(b) the defendant killed the murdered individual *intentionally or with the knowledge* that the acts which caused the death created a strong probability of death or great bodily harm to the murdered individual or another; and

(c) the other felony was one of the following: armed robbery ***." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6).

The verdict form supplied to and returned by the jury in connection with this aggravating factor stated, "We, the jury, unanimously find beyond a reasonable doubt that the following aggravating factor exists in re-

lation to this Murder: Larry Mack killed Joseph Kolar in the course of an Armed Robbery." The verdict failed to specify that defendant acted with the requisite mental state of intent or knowledge as required under section 9—1(b)(6)(b) of the Criminal Code.

Defendant appealed directly to this court, which originally affirmed his convictions and sentence. (*People v. Mack* (1984), 105 Ill. 2d 103.) However, the United States Supreme Court ordered reconsideration in light of its decisions in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708. (*Mack v. Illinois* (1987), 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1226.) Thereafter, this court remanded the cause to the circuit court for a hearing pursuant to *Batson* on whether the State exercised peremptory challenges in a racially discriminatory manner. On remand, the circuit court concluded that no *Batson* violation occurred, and this court subsequently affirmed. *People v. Mack* (1989), 128 Ill. 2d 231.

In his direct appeal, defendant did not challenge the sufficiency of the jury's eligibility-stage verdict. However, on July 31, 1990, defendant filed a six-count petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) in the circuit court of Cook County. In count I, defendant claimed that his death sentence was improper because, while the jury found that defendant killed Joseph Kolar during the course of an armed robbery, the jury's verdict did not specify that defendant acted with the requisite mental state. Defendant claimed that his death sentence was unconstitutional in the absence of a proper jury determination that a statutory aggravating factor existed. Defendant also claimed that the failure of his counsel on direct appeal to raise this issue deprived him of his constitutional right to effective assistance of counsel.

The circuit court entered judgment in defendant's favor on this claim, vacating his death sentence and ordering that a new sentencing hearing be conducted. This appeal by the State followed.

## ANALYSIS

### I

The State initially argues that review of defendant's claim under the Post-Conviction Hearing Act is procedurally barred because the claim could have been raised on direct appeal. It is well established that the scope of post-conviction review is limited to constitutional matters which have not been, and could not have been, previously adjudicated. (*People v. Brisbon* (1995), 164 Ill. 2d 236, 245; *People v. Winsett* (1992), 153 Ill. 2d 335, 346.) Thus, determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided, and issues that could have been raised on direct appeal but were not are waived. *People v. Mahaffey* (1995), 165 Ill. 2d 445, 452; *People v. Thomas* (1995), 164 Ill. 2d 410, 416; *People v. Collins* (1992), 153 Ill. 2d 130, 135; *People v. Neal* (1990), 142 Ill. 2d 140, 146.

The alleged defect in the eligibility-stage verdict is evident from the trial record and could have been raised in defendant's direct appeal. However, defendant specifically alleged in his post-conviction petition that appellate counsel's failure to raise this issue represents ineffective assistance of appellate counsel. A criminal defendant is guaranteed the effective assistance of appellate counsel as of right (*Evitts v. Lucey* (1985), 469 U.S. 387, 393-97, 83 L. Ed. 2d 821, 828-30, 105 S. Ct. 830, 834-37; *People v. Flores* (1992), 153 Ill. 2d 264, 277), and a claim of ineffective assistance of counsel on appeal is cognizable under the Post-Conviction Hearing Act (see, *e.g.*, *People v. Bell* (1991), 209 Ill. App. 3d 438, 443). This court has thus held that the doctrine of waiver should

not bar consideration of an issue where the alleged waiver stems from incompetency of appellate counsel. See *People v. Guest* (1995), 166 Ill. 2d 381; *People v. Salazar* (1994), 162 Ill. 2d 513, 520-21; *Winsett*, 153 Ill. 2d at 346; *Flores*, 153 Ill. 2d at 282; *People v. Ruiz* (1989), 132 Ill. 2d 1, 10; *People v. Brisbon* (1995), 164 Ill. 2d 236, 255.

The State does not dispute these general principles, but insists that they offer no solace to defendant because he has not established ineffective assistance of appellate counsel under the applicable standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. *Strickland* formulated a two-prong test requiring the defendant to show: (1) that counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) that defendant suffered prejudice as a result of counsel's deficient performance. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; see *Winsett*, 153 Ill. 2d at 347.) As applied to claims involving the failure of appellate counsel to raise a particular issue, the defendant must show that "the failure to raise that issue was objectively unreasonable, as well as a reasonable probability that, but for this failure, his sentence or conviction would have been reversed." (*People v. Caballero* (1989), 126 Ill. 2d 248, 270.) The State maintains that defendant can show neither deficient performance nor resultant prejudice within the meaning of *Strickland* based on appellate counsel's failure to raise the "defective verdict" issue.

We first consider whether appellate counsel's failure to raise this issue represents deficient performance, and preface our inquiry with the observation that counsel's choices as to the issues to raise on appeal are normally entitled to substantial deference. This court has stated that "counsel on appeal has no obligation to raise every

conceivable argument which might be made, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently erroneous." (*People v. Collins* (1992), 153 Ill. 2d 130, 140; see also *People v. Johnson* (1993), 154 Ill. 2d 227, 236.) The State asserts that the underlying question of the sufficiency of the jury's eligibility stage verdict is apparently one of first impression. The State posits that given the lack of directly applicable authority, appellate counsel's choice not to raise the issue was reasonable. We disagree.

This court has emphasized that a culpable mental state of intent to kill or knowledge of a strong probability of death or great bodily harm is an essential element of the particular statutory aggravating factor upon which defendant's eligibility for the death penalty was ostensibly based. (See *People v. Pugh* (1993), 157 Ill. 2d 1, 17; *People v. Ramey* (1992), 151 Ill. 2d 498, 545.) Moreover, this court has specifically held that an attorney's apparent misunderstanding of this mental state requirement fell outside the range of competence demanded of attorneys in criminal cases. (*Pugh*, 157 Ill. 2d at 19.) Notwithstanding the absence of case law involving the precise defect at issue here, we believe that a competent attorney would have recognized the fundamental importance of a legally sufficient eligibility-stage verdict representing a finding on all essential elements of the statutory aggravating factor at issue. In our view, appellate counsel's failure to seek reversal of defendant's death sentence on the basis of the defective eligibility-stage verdict was patently erroneous.

## II

The second prong of the *Strickland* standard requires defendant to demonstrate prejudice due to appellate counsel's error. In order to establish prejudice, defendant must show that had appellate counsel raised the is-

sue of the allegedly defective eligibility-stage verdict, there is a reasonable probability that his death sentence would have been reversed. (*People v. Caballero* (1989), 126 Ill. 2d 248, 270.) Thus, the inquiry as to prejudice requires that we examine the merits of this issue.

As a preliminary matter, it is useful to review some general principles of constitutional law regarding the jury's role in sentencing. While the right to a jury trial under the sixth amendment to the United States Constitution does not apply to sentencing, even in capital cases (see *Spaziano v. Florida* (1984), 468 U.S. 447, 82 L. Ed. 2d 340, 104 S. Ct. 3154), State law may vest a criminal defendant with a liberty interest, protected by the due process clause of the fourteenth amendment, in having a jury make particular findings relative to sentencing (see *Clemons v. Mississippi* (1990), 494 U.S. 738, 746, 108 L. Ed. 2d 725, 737, 110 S. Ct. 1441, 1447; *Hicks v. Oklahoma* (1980), 447 U.S. 343, 346, 65 L. Ed. 2d 175, 180, 100 S. Ct. 2227, 2229; see also *Cabana v. Bullock* (1986), 474 U.S. 376, 387 n.4, 88 L. Ed. 2d 704, 717 n.4, 106 S. Ct. 689, 697 n.4; *People v. Ramey* (1992), 151 Ill. 2d 498, 547-49). Under Illinois law, if the prosecution seeks the death penalty, the defendant is entitled to have a jury decide whether the death penalty should be imposed. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d); see *Ramey*, 151 Ill. 2d at 549.) Accordingly, the question of the sufficiency of the sentencing jury's verdict has constitutional implications.

We note that this due process right to sentencing by a jury does not necessarily preclude an appellate court from independently "resentencing" the defendant when, due to some error, the jury's sentencing decision cannot stand. Instead, the extent to which a reviewing court may engage in such resentencing would appear to depend on State law. (See *Clemons*, 494 U.S. at 747, 108 L. Ed. 2d at 737, 100 S. Ct. at 1447 (where State court in

a so-called "weighing State" had asserted authority under State law to decide whether to affirm death sentence even though one of the two aggravating circumstances relied upon by the jury was invalid, the United States Supreme Court rejected argument that the defendant had an unqualified liberty interest under the due process clause in having the jury assess the consequences of the invalidation of the aggravating circumstance, and the reviewing court could uphold sentence by independently reweighing aggravating and mitigating circumstances).) In the case at bar, however, the State has confined its argument to the sufficiency of the jury's verdict. The State has not argued that this court has authority under Illinois law to cure the jury's verdict by making an independent finding as to the existence of a statutory aggravating factor. We do not choose to consider this question on our own initiative.

We thus turn to the sufficiency of the eligibility-stage verdict returned in this case. The State contends that viewing the jury instructions in their entirety, the jury was properly informed that defendant must have killed intentionally or knowingly in order to be eligible for the death penalty. The State notes that the requisite mental state requirement was set forth in the issues instruction given to the jury (Illinois Pattern Jury Instructions, Criminal, No. 7A.11 (2d ed. 1981)) and was emphasized by the prosecutor in his argument to the jury. The State contends that the instructions and argument cured the defect in the verdict. In view of the discrepancy between the verdict form and other instructions, we will not lightly discount the possibility of juror confusion. (See generally *People v. Jenkins* (1977), 69 Ill. 2d 61, 66-67 ("While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly and the

other erroneously").) Moreover, the State's argument is misguided since the primary issue in this case is not how the jury was instructed, but what the jury found.

Proper jury instructions do not necessarily cure an improper verdict. *People v. Crite* (1994), 261 Ill. App. 3d 1041, illustrates this point. We note that while *Crite*, a decision of the appellate court, is not binding on this court, we find the analysis in *Crite* helpful in resolving the issue in the present case. In *Crite*, the defendant was charged with, *inter alia*, aggravated battery with a firearm, and the jury was properly instructed on the elements of that offense. However, no verdict forms pertaining to aggravated battery with a firearm were given to the jury. Instead, the jury was supplied with verdict forms for the uncharged and less serious offense of aggravated *discharge* of a firearm, and the jury returned a guilty verdict on that offense. In the trial court, the State argued that the jury had reached its decision based on the definition and proposition for the offense of aggravated battery with a firearm, and the court should amend the verdict accordingly. While the trial court accepted this reasoning and sentenced the defendant for aggravated battery with a firearm, the appellate court reversed. The appellate court rejected the State's argument that the discrepancy in the verdict form was a mere "typographical error." The *Crite* court stated that "[t]he [trial] court's attempt to interpret a straightforward, unambiguous verdict was an attempt to venture into the minds and deliberations of the jury and its understanding and meaning of its verdict. It was not the trial court's function, nor is it ours, to speculate on the jury's verdict." (*Crite*, 261 Ill. App. 3d at 1046.) The verdict at issue here is, perhaps, more ambiguous and more in need of interpretation than the verdict in *Crite*. However, in this case, as in *Crite*, the interpretive process should not become a speculative attempt to

reconstruct the jury's deliberations and divine its unexpressed conclusions.

As noted above, the flaw in the verdict in the case at bar appears to present a question of first impression in this State. However, the high court of a sister State has held that an eligibility-stage verdict "cannot be sustained if it 'completely omits an essential element of the statutory aggravating circumstance.' " (*Jarrell v. State* (1992), 261 Ga. 880, 883, 413 S.E.2d 710, 713, quoting *Black v. State* (1991), 261 Ga. 791, 797, 410 S.E.2d 740, 746.) This result comports with the traditional principles by which Illinois courts assessed the sufficiency of verdicts in noncapital cases prior to the advent of pattern jury instructions (when such questions arose with greater frequency).

The test of the sufficiency of a verdict is whether the jury's intention can be ascertained with reasonable certainty from the language used. (*People v. Schrader* (1954), 2 Ill. 2d 212, 216.) "[Verdicts] should have a reasonable intendment, receive a reasonable construction, and not be set aside unless from necessity which originates in doubt as to their meaning, or because of the immateriality of the issues found, *or a failure to find upon some material issue involved.*" (Emphasis added.) (*People v. Swinson* (1950), 406 Ill. 233, 235.) It has also been noted that all parts of the record will be searched and interpreted together in determining the meaning of a verdict. (*People v. Keagle* (1967), 37 Ill. 2d 96, 102; *People v. Pignatelli* (1950), 405 Ill. 302, 305; *People v. Bailey* (1945), 391 Ill. 149, 153.) Even so, the verdict itself "must be responsive to the issues [and] must contain, either in itself or by reference to the indictment, every material fact constituting the crime." (*Swinson*, 406 Ill. at 236.) A verdict which finds the accused guilty of only a certain part of an offense amounts to an acquittal of the residue. *People v. Ellis* (1923), 309 Ill. 51, 52.

It is well established that a general verdict of "guilty in manner and form as charged in the indictment" or simply "guilty" is sufficient to sustain a conviction (see *People v. Skinner* (1947), 397 Ill. 273, 275-76), as is a verdict identifying the offense by name (*cf. Pignatelli,* 405 Ill. at 305). However, where the verdict purports to set out the elements of the offense as specific findings, it must do so completely or be held insufficient. See *Swinson,* 406 Ill. at 236 ("The difficulty with the wording of the verdicts in [two earlier] cases was that each verdict limited the finding of guilty to a few facts, these being insufficient to constitute the crime or identify it as the one charged in the indictment").

We note, as does defendant, that the form of verdict presently in use for cases where only one statutory aggravating factor is at issue is in the nature of a general verdict; it simply pronounces the defendant "eligible" for the death penalty and finds that "the statutory aggravating factor" exists. (See Illinois Pattern Jury Instructions, Criminal, No. 7B.10 (3d ed. 1992).) In contrast, however, the jury here did not return a general verdict. Its verdict does not state that defendant was found eligible for the death penalty, nor does it simply state that a statutory aggravating factor was found to exist. Rather, the verdict attempted to set forth a statutory aggravating factor, but failed to do so completely and omitted an essential element. The verdict cannot withstand scrutiny under the principles set forth above.

In reaching our decision, we are not unaware of the strength of the evidence relative to defendant's state of mind when he killed Joseph Kolar. Indeed, in the opinion in defendant's direct appeal, this court remarked that defendant's testimony at the aggravation/mitigation stage of sentencing that the fatal shot was accidental was "impossible to accept in view of the other

evidence in the case." (*People v. Mack* (1984), 105 Ill. 2d 103, 128.) However, as noted above, the State has limited its argument to the sufficiency of the jury's verdict. The State has not argued that an insufficient verdict could be deemed harmless error based on the strength of the evidence, and the availability of a harmless error analysis in this setting is doubtful at best. Review under the harmless error rule presupposes an *actual* verdict. "The inquiry *** is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (Emphasis in original.) *Sullivan v. Louisiana* (1993), 508 U.S. 275, 279, 124 L. Ed. 2d 182, 189, 113 S. Ct. 2078, 2081 (where constitutionally defective instruction on definition of reasonable doubt vitiated the jury's verdict, the harmless error rule did not apply); see also *Williams v. Calderon* (9th Cir. 1995), 52 F.3d 1465, 1477 (citing *Sullivan* in support of conclusion that error in instruction which omitted an element of statutory aggravating factor was not cured by State court's determination that evidence was so overwhelming that no rational, properly instructed jury could have failed to find the omitted element).

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County vacating defendant's death sentence and ordering a new sentencing hearing is affirmed.

*Affirmed.*

CHIEF JUSTICE BILANDIC, dissenting:

I respectfully dissent from the majority's conclusion that the defendant has established ineffective assistance of appellate counsel under the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80

L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064. Specifically, I reject the majority's holding that the defendant suffered prejudice as a result of appellate counsel's failure to contest the sufficiency of the eligibility verdict on direct appeal.

As the majority acknowledges, a finding of prejudice resulting from an alleged error is required if a defendant is to establish ineffective assistance of counsel. (*People v. Harris* (1994), 164 Ill. 2d 322, 348.) It is appropriate for this court to resolve an ineffective-assistance claim by addressing the prejudice prong alone. (*Harris*, 164 Ill. 2d at 349 (where it was held that if no prejudice ensued, a claim may be disposed of on that ground alone), citing *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) In the instant case, the language of the jury's eligibility verdict could not have caused prejudice to the defendant. The majority finds that prejudice resulted because the eligibility verdict form failed to specify that the defendant acted with the requisite mental state. I disagree. The omission of the defendant's mental state in the eligibility verdict is a minor technical defect which, when the entire record of this case is reviewed, did not cause prejudice to the defendant.

The majority correctly notes that all parts of the record will be searched and interpreted together to ascertain the meaning of a verdict. (167 Ill. 2d at 537.) The majority, however, appears to abandon this principle in resolving this case. When the complete record of the defendant's sentencing hearing is reviewed, it is clear that the jury's eligibility verdict was proper. The record clearly demonstrates that the jury was adequately informed that eligibility, premised upon murder in the course of a felony, required a finding that the defendant acted intentionally or knowingly. It is uncontested that the jury was properly instructed at the

eligibility stage in *both* the oral and the written instructions that, in order to find the defendant eligible for the death penalty, the jury must find beyond a reasonable doubt that the defendant killed the victim:

> "intentionally or with the knowledge that the acts which caused the death created a strong probability of death or great bodily harm to Joseph Kolar."

The many admonishments to the jury, which detailed the elements it had to find beyond a reasonable doubt for the defendant to be eligible for death, were clear and precise. It is evident that the jury was repeatedly told that it had to find that the defendant possessed intent or knowledge when he killed the victim. (See *People v. Hester* (1989), 131 Ill. 2d 91, 98 (where it was held that instructions should not be viewed in isolation but should be considered as a whole).) The failure of the verdict form to repeat this admonishment did not, in my view, constitute a defect so prejudicial as to require reversal of the jury's finding.

A trial court's determination in a post-conviction proceeding will not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 514.) In view of the fact that the defendant has not established ineffective assistance of counsel regarding the eligibility verdict, I find that the trial court's decision to grant the defendant post-conviction relief and ordering a new sentencing hearing was against the manifest weight of the evidence. Accordingly, I would reverse the judgment of the circuit court vacating the defendant's death sentence on this ground, and I would remand to the trial court for examination of the remaining issues raised in the defendant's post-conviction petition. For these reasons, I dissent from the majority's decision.

JUSTICES MILLER and HEIPLE join in this dissent.