In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 06-3257

LARRY MACK,

*Petitioner-Appellant*,

*v.*

TERRY L. MCCANN, Warden,

*Respondent-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 2999—**Ruben Castillo,** *Judge*.

_____

ARGUED FEBRUARY 16, 2007—DECIDED JUNE 18, 2008

_____

Before FLAUM, RIPPLE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. On the day after Thanksgiving
in 1979, Larry Mack murdered Joseph Kolar, a bank
security guard, in the course of robbing a Chicago bank.
Initially sentenced to death for this senseless killing, Mack
has waged a sometimes successful twenty-nine-year
legal battle to lessen the severity of his punishment. The
Illinois courts vacated the death sentence and eventually
sentenced Mack to natural life in prison. At the time of
his original trial, in an effort to avoid the death penalty,
Mack offered to plead guilty in exchange for a sentence
of natural life, an offer that was rejected by the State's

Attorney. Mack now challenges his life sentence on con-
stitutional grounds, appealing the district court's denial
of his *habeas corpus* petition. We affirm.

## I.

We assume the state court's factual determinations are
correct unless the defendant rebuts them with clear and
convincing evidence. 28 U.S.C. § 2254(e)(1); *Julian v. Bartley,*
495 F.3d 487, 492 (7th Cir. 2007). Our rendition of the
facts therefore comes from the Illinois supreme court's
first decision in this case. *People v. Mack*, 473 N.E.2d 880
(Ill. 1984), *vacated*, 479 U.S. 1087 (1987) (hereafter, we
will refer to the Illinois supreme court's first decision as
"*Mack I*"). On November 23, 1979, Mack and two accompli-
ces robbed the West Pullman United Savings Bank in
Chicago. When Mack first entered the bank, Mr. Kolar, a
uniformed security guard, was speaking with John
McGinty, a loan officer employed by the bank. Mack
approached Mr. Kolar, pulled a gun from under his coat
and placed it inches from the bank guard's collar. Mr.
Kolar reacted by raising his arm to push the gun away.
Mack fired the gun, piercing Mr. Kolar's right arm. Mack
then put his hand on the back of Mr. Kolar's neck, placed
the gun against his back, and walked him over to an
area near the windows. Mack forced Mr. Kolar to the
floor, straddled him with his legs and fired a second,
fatal shot into his chest. Mack then took Mr. Kolar's gun
from its holster. As Mack straddled Mr. Kolar, his two
accomplices entered the bank and jumped over a parti-
tion leading to the tellers' stations. As his accomplices
collected money, Mack patrolled the bank, carrying
Mr. Kolar's gun as well as his own. Three Chicago police
officers who happened to be passing the bank saw Mack

and his cohorts making a hasty exit. After following the three robbers a short distance, the police officers stopped the getaway car and ordered Mack and the others out. The officers arrested all three, and recovered from the car the bags of money taken from the bank, Mack's gun and Mr. Kolar's gun. *Mack I*, 473 N.E.2d at 884-85.

Mack's accomplices pled guilty to charges arising from the bank robbery and were sentenced to prison terms. Mack's multiple attempts to enter into a plea agreement failed when the State's Attorney refused to accept Mack's final offer to plead guilty in exchange for a sentence of natural life. Mack waived a jury for the guilt phase of the trial, retaining his right to request a jury for sentencing. The trial court found Mack guilty of three counts of murder and two counts of armed robbery. Specifically, Mack was convicted of murder on three different theories: (1) that he intentionally and knowingly shot and killed Mr. Kolar; (2) that he shot and killed Mr. Kolar with a gun knowing that shooting a person with a gun created a strong probability of death or great bodily harm to that person; and (3) that he shot and killed Mr. Kolar while committing a forcible felony, namely armed robbery. As for the two counts of robbery, Mack was charged with robbing Mr. Kolar and with robbing the loan officer by taking United States currency from the person and presence of these two men.

The case proceeded to the two-part penalty phase to determine whether Mack would be sentenced to death. A jury was impaneled for this purpose. In the first phase, the jury determined that Mack was eligible for a sentence of death because he was at least eighteen years of age at the time of the murder, and he personally murdered an individual during the course of a felony, satisfy-

ing one of the statutory aggravating factors that must be found before the death penalty may be imposed. During the second phase of the penalty hearing, the jury heard evidence relevant to aggravating and mitigating sentencing factors. The jury unanimously found that there were no mitigating factors sufficient to preclude a sentence of death. The court sentenced Mack to death, and entered concurrent terms of twenty-five years for each armed robbery conviction. *Mack I*, 473 N.E.2d at 884.

In Illinois, capital cases are automatically appealed directly to the supreme court. In his direct appeal, Mack raised issues regarding only the sentencing hearing and the sentence. He did not challenge any aspects of the guilt phase of the trial. Mack argued that the prosecutor had unlawfully relied on the wishes of Mr. Kolar's family in refusing to accept his offer to plead guilty in exchange for a sentence of natural life and to instead seek the death penalty. The supreme court ruled that the prosecutor was not barred from considering the wishes of the victim's family in deciding whether to accept an offered plea bargain in a capital case. Mack also argued that certain members of the prosecution team had already accepted his offered plea before a supervising prosecutor decided to defer to the wishes of the family. The trial court found that the State's Attorney's office had never accepted Mack's plea offer, and the supreme court affirmed that finding. *Mack I*, 473 N.E.2d at 887-89.

The Illinois supreme court next rejected Mack's argument that he was entitled to a new sentencing hearing because three jurors were erroneously excused for cause under *Witherspoon v. Illinois*, 391 U.S. 510 (1968). The supreme court found that the trial court conducted an appropriate *voir dire* and that the disputed jurors were

correctly excused because they were unwilling to impose the death penalty under any circumstances. *Mack I*, 473 N.E.2d at 889-90. The court also rejected Mack's argument that the prosecutor had impermissibly used race as a factor in exercising its peremptory challenges. The United States Supreme Court had not yet decided *Batson v. Kentucky*, 476 U.S. 79 (1986), at the time the *Mack I* court ruled that such a challenge could not stand unless the defendant was able to demonstrate systemic and purposeful exclusion of African Americans from the jury. *Mack I*, 473 N.E.2d at 890. Mack could not make this showing, and the court rejected this challenge and also disallowed a claim that the jury was not adequately screened for racial bias. *Mack I*, 473 N.E.2d at 890-92. Nor did the court accept Mack's claim that the prosecutor made improper comments about the victim's family and the possibility that Mack might be given an early release if not subjected to the death penalty (a complaint we find somewhat ironic in light of the instant appeal). 473 N.E.2d at 892. Mack also claimed ineffective assistance of counsel at the sentencing phase, arguing that his lawyer did not adequately develop his theory that the shooting was accidental because the gun misfired twice during the robbery. The court found that counsel attempted to make this argument and presented some evidence that the first shot was accidental, but that, in light of the loan officer's testimony about the second shot, it was "impossible to accept" a claim that the second, fatal shot was fired accidentally. 473 N.E.2d at 893-94.

The court rejected several other more minor arguments, and then addressed Mack's claims that he should have been convicted of only one count of armed robbery and one count of murder. The court granted Mack relief on both

of these claims. Under Illinois law, when money is taken from one victim in the presence of several persons against whom the threatened force was directed, there is only one robbery. *Mack I*, 473 N.E.2d at 897. The court therefore affirmed the conviction for the robbery of the bank's loan officer and vacated the conviction for the robbery of Mr. Kolar.[1] As for the three murder convictions, the court found that only one count of murder could stand. The three convictions were for the intentional and knowing shooting and killing of Mr. Kolar, the shooting and killing of Mr. Kolar with knowledge that the shooting created a strong probability of death or great bodily harm to Mr. Kolar, and the shooting and killing of Mr. Kolar while committing the forcible felony of armed robbery. The court found that, although "[t]here was evidence to support a conviction of all three charges," there could be only one conviction because only one person was killed. In Illinois, the rule for multiple convictions arising out of a single act required that the sentence be imposed on the most serious offense. *Mack I*, 473 N.E.2d at 898. All three of the murder convictions carried the possibility of a death sentence, but the court considered the knowing and intentional shooting and killing of Mr. Kolar to be the most serious crime of the three charged because it involved a more culpable mental state than the other two. The court therefore affirmed the convic-

---

[1] Mack was not charged with robbery for taking Mr. Kolar's gun from him. Both robbery charges were based on taking money from the bank. Because the loan officer held an official capacity with the bank and Mr. Kolar worked for a private security firm, the court affirmed the conviction that was related to the loan officer and vacated the robbery conviction related to Mr. Kolar.

tion for the knowing and intentional shooting and killing of Mr. Kolar and vacated the other two murder convictions. *Mack I*, 473 N.E.2d at 898.

Following the Illinois supreme court's decision, the United State Supreme Court ruled in *Batson* that "a defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Batson*, 476 U.S. at 96. Because the rule established in *Batson* was held to apply to all cases pending on direct appeal, *see Griffith v. Kentucky*, 479 U.S. 314 (1987), the Supreme Court vacated and remanded the judgment in Mack's case for further consideration of the issue. The Illinois supreme court remanded the matter to the trial court for a hearing on the *Batson* issue. That court found that the explanations offered by the prosecution for the peremptory challenges were credible, race neutral and sufficient to withstand scrutiny under *Batson*. That decision was automatically appealed to the Illinois supreme court, which affirmed and reinstated Mack's death sentence. *People v. Mack*, 538 N.E.2d 1107 (Ill. 1989) (hereafter "*Mack II*").

Mack next filed a petition for post-conviction relief in the circuit court of Cook County, arguing that the jury returned a legally insufficient verdict in the first phase of his death penalty hearing. The circuit court agreed, vacated Mack's death sentence and remanded the matter for a new sentencing hearing. This time the State appealed, and the Illinois supreme court affirmed. *See People v. Mack*, 658 N.E.2d 437 (Ill. 1995) (hereafter "*Mack III*"). The court noted that at the first stage of the death penalty hearing, the State sought to establish Mack's eligibility for the death penalty on the basis of the stat-

utory factor set forth in section 9-1(b)(6) of the Illinois Criminal Code of 1961. The relevant statute provided:

> (b) Aggravating Factors. A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of murder may be sentenced to death if:
>
> * * * * * *
>
> > 6. the murdered individual was killed in the course of another felony if:
> >
> > > (a) the murdered individual was actually killed by the defendant and not by another party to the crime or simply as a consequence of the crime; and
> > >
> > > (b) the defendant killed the murdered individual *intentionally or with the knowledge* that the acts which caused the death created a strong probability of death or great bodily harm to the murdered individual or another; and
> > >
> > > (c) the other felony was one of the following: armed robbery[.]

Ill. Rev. Stat. 1979, ch. 38, par. 9-1(b)(6); *Mack III*, 658 N.E.2d at 439-40 (emphasis added). The verdict form provided to and returned by the jury stated, "We, the jury, unanimously find beyond a reasonable doubt that the following aggravating factor exists in relation to this Murder: Larry Mack killed Joseph Kolar in the course of an Armed Robbery." *Mack III*, 658 N.E.2d at 440. The verdict form thus failed to specify that Mack acted with the level of intent required by the statute. Mack had not raised this issue in his direct appeal, and the

supreme court therefore considered it in the context of a claim for ineffective assistance of appellate counsel. The court noted that a culpable mental state of intent to kill or knowledge of a strong probability of death or great bodily harm is an essential element of the statutory factor on which Mack's eligibility for a death sentence was based. The court also noted that, in Illinois, a defendant is entitled to have a jury determine whether the death penalty may be imposed. *Mack III*, 658 N.E.2d at 441-42. The court rejected the State's claim that any defect in the verdict form was corrected by the jury instructions, which accurately stated the law. The court concluded that because the verdict form completely omitted an essential element of the relevant aggravating factor, the circuit court was correct to vacate the sentence and to order a new sentencing hearing. *Mack III*, 658 N.E.2d at 444.

On remand to the circuit court of Cook County, Mack moved to bar the imposition of the death penalty at his new sentencing hearing based on double jeopardy grounds. The circuit court denied that motion, and Mack filed an interlocutory appeal to the Illinois supreme court. *See People v. Mack*, 695 N.E.2d 869 (Ill. 1998) (hereafter "*Mack IV*"). The supreme court affirmed the circuit court's denial of the motion and the circuit court proceeded with a new sentencing hearing for Mack. Nearly twenty-two years had elapsed since the day of the murder when the circuit court began to conduct *voir dire* for Mack's new sentencing hearing. Certain witnesses had died in the intervening time, including a bank teller present on the day of the murder and the medical examiner who had performed the autopsy on Mr. Kolar.

At the re-sentencing hearing, Mack presented new evidence supporting his claim that both shots were fired

accidentally rather than intentionally. A paralegal working for Mack's defense attorney had returned to the scene of the crime some twenty years after the fact, and had recovered bullet fragments from the floor near where the second shot was fired. Mack presented expert testimony that suggested that the first bullet was the fatal shot, and that it had passed through Mr. Kolar's arm and chest before exiting his body. The second bullet, according to Mack's theory, never struck Mr. Kolar at all but instead impacted the floor next to Mr. Kolar. Mack argued to the jury that the first shot discharged accidentally when Mr. Kolar reached up to push away the gun. The second shot also discharged accidentally as Mack was leaning over Mr. Kolar to remove his gun from its holster, striking the floor rather than Mr. Kolar. Mack's theory was based on his own testimony as well as expert testimony regarding the bullet fragments and expert testimony reinterpreting a report from an autopsy conducted on Mr. Kolar in 1979.

At the end of the death penalty eligibility phase of the proceedings, the jury was instructed that, in order to find Mack eligible for a death sentence under Illinois law, the State must prove beyond a reasonable doubt (1) that Mack was eighteen years old or older at the time of the commission of the murder; and (2) that a statutory aggravating factor exists. The court defined the disputed statutory aggravating factor as follows:

> The murdered person was killed in the course of another felony if the murdered person was actually killed by the defendant, and in performing the acts which caused the death of the murdered person, the defendant acted with the intent to kill the murdered person, or with the knowledge that his acts created

a strong probability of death or great bodily harm to the murdered person, and the other felony was armed robbery.

Tr. at F-56. After deliberations, the jury returned a verdict that stated in its entirety:

We, the jury, cannot unanimously find beyond a reasonable doubt that the defendant Larry Mack is eligible for a death sentence under the law. We cannot unanimously find beyond a reasonable doubt that the defendant was 18 years old or older at the time of the murder for which he was convicted in this case or we cannot find unanimously beyond a reasonable doubt that the statutory aggravating factor exists.

The verdict form was signed by all twelve of the jurors. The effect of this verdict under Illinois law was that Mack was no longer eligible for a death sentence. All that remained was for the trial court to determine Mack's sentence.

The trial court ordered a pre-sentence investigation and scheduled a hearing so that the State could present evidence in aggravation and Mack could present evidence in mitigation. At the time, Illinois law provided that, for the purposes of a non-capital sentence, the trial judge could consider evidence in aggravation and mitigation and determine by a preponderance of the evidence the facts which would influence the final sentence. Prior to that hearing, Mack's attorney moved to limit the sentence to forty years, the maximum sentence for a murder without aggravating factors. Under Illinois law, according to Mack, the only possible aggravating factors warranting a sentence in excess of forty years were that

the murder was committed intentionally and knowingly
or the murder was committed with exceptionally brutal or
heinous behavior indicative of wanton cruelty. Mack
argued that the State sought only to prove intentional
and knowing murder, and that the jury had rejected
those claims in the death eligibility hearing. Under the
Supreme Court's then-recent decision in *Apprendi v. New
Jersey*, 530 U.S. 466 (2000), Mack argued that a jury must
find a statutory aggravating factor beyond a reasonable
doubt. Because the jury had failed to do so, Mack con-
tended that the maximum sentence for his crime was
forty years. Mack conceded that there was a contradic-
tion between the trial court's finding of guilt in the
1981 bench trial and the jury's determination in 2001. That
is, the 1981 trial court found beyond a reasonable doubt
that Mack committed the murder knowingly and inten-
tionally, a finding that was affirmed by the Illinois su-
preme court. The 2001 jury, on the other hand, could not
unanimously agree that the murder was committed
knowingly and intentionally. The prosecution contended
that, even if *Apprendi* applied to Mack's sentencing, the
State was not seeking to use a fact to enhance his sen-
tence that had not already been proved beyond a reason-
able doubt. Because the 1981 trial court found intent and
knowledge beyond a reasonable doubt, Mack was eligible
for a sentence in excess of forty years, including a sen-
tence of natural life, the State argued. The trial court
agreed with the State that Mack was eligible for a maxi-
mum sentence of natural life.

After hearing evidence in aggravation and mitigation,
the trial court sentenced Mack to a term of natural life
in prison, commenting, in relevant part:

> The Court will consider the evidence in the case, the
> evidence at the death penalty phase, the evidence at

the sentencing hearing, the mandatory factors of aggravation, mitigation, set forth in the Statute, Pre-Sentence Investigation Report, which also speaks to the Defendant's past two (2) violent criminal convictions, and will consider the arguments made by counsel at this sentencing hearing.

All things considered pertaining to the crime and the criminal, the Court finds by a preponderance of the evidence under Chapter 38, Section 1005-8-1(a)1(b), that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, and the Court also finds with respect to the law applicable at the time, which the Defendant has chosen to be sentenced under, that the murdered individual was actually killed by the Defendant and that the Defendant killed the victim with knowledge that the acts which caused the death created a strong probability of death. All these things being considered and the Court having so found, the Court makes its finding under the aggravating factors I just referred to in 9-1 of the Criminal Code, that is, once again, that the Defendant performed the acts and that the Defendant killed the murdered individual with knowledge that the acts which caused death created a strong probability of death. All these things considered, the law permits me, and I do find that the proper and appropriate sentence in this case is natural life in prison.

Transcript of Sentencing, at I-133-34 (February 26, 2002) (hereafter "Sent. Tr."). Following a discussion off the record about *Apprendi*, the court added:

As I announced my sentence, I am cognizant that the U.S. Supreme Court has not yet decided whether

>  *Apprendi* is retroactive, and I am cognizant also that
>  the Illinois Supreme Court has not decided whether
>  under the U.S. Constitution and the Illinois Constitu-
>  tion whether *Apprendi* should be retroactive and
>  whether or not the State's argument that this was a
>  final judgment many years ago will be accepted by
>  at least the Illinois Supreme Court, but I am assuming
>  that *Apprendi* will not be retroactive and/or that this
>  was a final judgment many years ago, and that is
>  why I applied the brutal, heinous conduct indicative
>  of wanton cruel behavior in sentencing the Defendant
>  as one of the two (2) factors under the Statute.

Sent. Tr. at 1-134-35.

Mack appealed this sentence, arguing that it violated the
Supreme Court's mandate in *Apprendi*. Because a capital
sentence was no longer at issue, the appeal was heard
by the Illinois appellate court. At first, the court found
that *Apprendi* did not apply retroactively to Mack's case,
and the court therefore affirmed Mack's life sentence.
*People v. Mack*, No. 1-02-0961, slip op. (Ill. App. 5 Dist.
October 17, 2003) (hereafter "*Mack V*"). The court relied on
*People v. De La Paz*, 204 Ill.2d 426 (Ill. 2003), in finding that
*Apprendi* should not be applied retroactively to criminal
appeals where the direct appeals were exhausted before
*Apprendi* was decided. The appellate court agreed that
Mack's conviction had become final years before *Apprendi*
was decided and that *Apprendi* would therefore not
apply to his appeal. This was a curious ruling because
Mack's case was still on direct appeal and his new sen-
tence was being challenged for the first time. *See White
v. Battaglia*, 454 F.3d 705, 706 (7th Cir. 2006), *cert. denied*,
127 S. Ct. 1272 (2007) (although *Apprendi* is not retroactive,
it applies in cases where a defendant's sentence was still

pending on direct appeal at the time *Apprendi* was decided). On rehearing, the appellate court reversed course on the applicability of *Apprendi* but affirmed Mack's life sentence on other grounds. *People v. Mack*, No. 1-02-0961, slip op. (Ill. App. 5 Dist. May 7, 2004) (hereafter "*Mack VI*"). The court recognized that, because of the new sentencing proceedings, Mack's case was still on direct appeal, and the judgment had not become final until after *Apprendi* was decided. Accordingly, the court found *Apprendi* applicable to Mack's sentencing. The court next found that the sentencing court violated *Apprendi* when it sentenced Mack to natural life in prison based on a factual finding by a preponderance of the evidence that the crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The court found nonetheless that the error was harmless because any jury would have "undoubtedly" found that Mack's behavior was exceptionally brutal and heinous, and indicative of wanton cruelty. Both of the appellate court orders were authored by Justice Neil Hartigan, who had served as the Illinois Attorney General during the time period when the State of Illinois was defending Mack's original death sentence before the Illinois courts and the United States Supreme Court. Following these appellate court rulings, the Illinois supreme court declined to hear Mack's appeal again.

Mack then filed a petition for a writ of *habeas corpus* in the federal district court. In his petition, Mack contended that an extended term sentence violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as interpreted by *Apprendi*. Mack argued that such a violation cannot ever be deemed harmless error. Finally, Mack asserted that Justice

Hartigan's participation in deciding his appeal violated his Fourteenth Amendment right to due process because Justice Hartigan had previously represented the State in this action in his capacity as Attorney General. The district court initially found that "[t]here is no question that the trial court's imposition of this sentence violated *Apprendi*." *Mack v. Battaglia*, 385 F. Supp. 2d 751, 760 (N.D. Ill. 2005) (hereafter "*Mack VII*"). The district court held that the appellate court's finding that the error was harmless was contrary to and involved an unreasonable application of the federal law regarding harmless error, and was based on an unreasonable determination of the facts in light of the evidence presented at the second sentencing hearing and the jury's verdict in that hearing. Because of that holding, the court found it unnecessary to address Mack's claims regarding Justice Hartigan. The court ordered the State to hold a new sentencing hearing to determine Mack's eligibility for an extended term sentence of natural life or to re-sentence him to a non-extended term of no more than forty years.

Both Mack and the State moved for reconsideration. Mack argued that a new sentencing hearing would violate the principles of double jeopardy. The State contended that any errors committed by the Illinois appellate court in finding that Mack's behavior met the brutal and heinous standard were irrelevant because the original trier of fact, the judge in the 1981 bench trial, found beyond a reasonable doubt the facts necessary to support a sentence of natural life. The district court issued a new memorandum opinion and order. *Mack v. Battaglia*, 441 F. Supp. 2d 928 (N.D. Ill. 2006) (hereafter "*Mack VIII*"). On reconsideration, the district court agreed with the State that Mack's life sentence satisfied the rule in *Apprendi* be-

cause the original trial court found the facts necessary to support a life sentence when it found beyond a reasonable doubt that Mack knowingly and intentionally killed Mr. Kolar in the course of an armed robbery, a finding that was affirmed by the Illinois supreme court. The district court rejected as irrelevant Mack's claim that he never waived his right to have a jury determine his sentence. Mack waived a jury for the purposes of the guilt phase of his trial, thereby agreeing "that the trial judge should find the facts necessary to support his conviction. Those are the same facts that support his natural life sentence." *Mack VIII*, 441 F. Supp. 2d at 933 (footnote omitted). Because it determined that Mack's sentence did not violate *Apprendi*, the district court turned to Mack's claim that his Fourteenth Amendment right to due process was violated by Justice Hartigan's participation in his appeal after representing the State as Attorney General in his earlier appeals. The court found that there was no evidence that Justice Hartigan was actually biased, and the court accepted the State's evidence that Justice Hartigan played only a general, supervisory role in the case when he was the Attorney General, and did not take part in preparing, briefing or arguing the case before the Illinois supreme court. Accordingly, the court found no due process violation. Given the complexities of the *Apprendi* determination, the district court *sua sponte* issued a certificate of appealability on that issue pursuant to 28 U.S.C. § 2253(c)(2). Mack appeals.

## II.

Both sides now agree that *Apprendi* applies to Mack because his sentence was on direct appeal when *Apprendi* was decided. *See White*, 454 F.3d at 706. After this lengthy

appellate history, Mack's case comes down to a single, discrete issue. Mack contends that his natural life sentence violates the principle of *Apprendi* because there was no jury determination establishing the facts necessary to impose an enhanced sentence, and Mack never waived his right to have a jury trial as to his sentence. He maintains that this error was not harmless and that the state court errors prejudiced him. He argues that double jeopardy principles bar another sentencing trial, and that he should therefore be re-sentenced to a maximum term of up to forty years' imprisonment. Mack moved to amend the certificate of appealability in this court to include the issue relating to Justice Hartigan, and we denied that motion. Mack nonetheless argues again that Justice Hartigan's role in deciding his appeal violated his right to due process. Our analysis of the *Apprendi* claim will make it unnecessary to consider the due process claim, and we therefore continue to decline to amend the certificate of appealability to consider that issue. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001) (when the court determines that the expansion of the certificate of appealability is not warranted, the court is not required to and will not address arguments outside of those issues certified for appeal).

Our review of the district court's decision to deny Mack's habeas petition is *de novo*, and is governed by the terms of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Julian v. Bartley*, 495 F.3d 487, 491-92 (7th Cir. 2007). *See also Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003); 28 U.S.C. § 2254. "Habeas relief must not be granted unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Julian*, 495 F.3d at 492. *See also Jackson*, 348 F.3d at 662; 28 U.S.C. § 2254(d). "In assessing the reasonableness of the state court's decision, the federal court assumes that the state court's factual determinations are correct unless the defendant rebuts them with clear and convincing evidence." *Julian,* 495 F.3d at 492. *See also* 28 U.S.C. § 2254(e)(1).

At his original trial in 1981, Mack waived his right to have a jury determine whether he was guilty of the crimes charged but he retained his right to a jury trial at sentencing. His written waiver stated:

> I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the Court for hearing. This waiver is for the initial hearing and not a waiver of his right to a jury at a sentencing hearing[.]

The second sentence was handwritten onto a pre-printed standard jury waiver form after a colloquy with the court to determine if Mack understood his rights and the effect of his waiver. Mack's trial counsel told the court that Mack wished to be tried by the court "with respect to the initial phase of these proceedings." Tr. at 129. After determining that Mack understood his rights, the trial court stated:

> I think the document should reflect that this jury waiver is with respect to the initial phase, the guilt or innocence phase of the proceedings, and is not applicable to any subsequent sentencing hearing should there be a determination of guilt. Is that understood by everybody?

Tr. at 132. Both the prosecutor and defense counsel assented. The 1981 trial court, as we noted above, found Mack guilty of murder under all three theories charged in the indictment. That is, the court found Mack guilty of (1) intentionally and knowingly shooting and killing Mr. Kolar; (2) shooting and killing Mr. Kolar with a gun knowing that such shooting with a gun created a strong probability of death or great bodily harm; and (3) shooting and killing Mr. Kolar while committing the forcible felony of armed robbery. *Mack I*, 473 N.E.2d at 898. Mack did not challenge these findings and the Illinois supreme court found that there was evidence to support a conviction under all three theories. Because one person was killed, the court held that there could be only one conviction; Illinois law required that the sentence be imposed on the most serious offense. The court selected the intentional and knowing killing of Mr. Kolar as the most serious offense because it involved the most culpable mental state of the three theories. *Mack I*, 473 N.E.2d at 898. That conviction was affirmed and the other two were vacated. Thus, at the guilt phase of the trial, the court found beyond a reasonable doubt that Mack intentionally and knowingly killed Mr. Kolar, the Illinois supreme court affirmed that finding, and Mack never challenged the finding of guilt in any court.

In Illinois, under the law in effect at the time of the original trial, Mack could be sentenced to death if he was at least eighteen years of age at the time of the murder and certain aggravating factors were found to exist beyond a reasonable doubt. Ill. Stat. ch. 38, § 9-1 (1979). The Illinois statute provided for a separate sentencing hearing for a death penalty case, which allowed a defendant to request that a jury determine whether any ag-

gravating or mitigating factors existed. Ill. Rev. Stat. ch 38, § 9-1(d) (1979). For any non-death sentence, however, Illinois law allowed the trial judge to set the term of imprisonment as follows:

> (1) for murder, a term shall be not less than 20 years and not more than 40 years, or, if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment.

Ill. Rev. Stat. ch 38, § 1005-8-1 (1978). The referenced aggravating factors were those listed in the death penalty provision. Thus, under Illinois law in effect at the time of Mack's trial, if a jury found that no aggravating factors existed beyond a reasonable doubt, a defendant would be spared the death penalty. But the trial court could then find by a preponderance of the evidence that an aggravating factor did exist and use that finding to sentence the defendant to natural life imprisonment.

The aggravating factor in dispute at Mack's original trial was the felony murder provision, and the only part of that factor under dispute was whether "the defendant killed the murdered individual *intentionally or with the knowledge* that the acts which caused the death created a strong probability of death or great bodily harm to the murdered individual or another."

During the guilt phase of Mack's 1981 trial, the court found beyond a reasonable doubt that Mack killed Mr. Kolar intentionally and with the knowledge that shooting a gun at Mr. Kolar created a strong probability of death

or great bodily harm, as alleged in the indictment. The Illinois supreme court affirmed that finding. Illinois law gave Mack the right to have a second trier of fact at the death penalty eligibility stage consider again whether the murder was intentional or committed with knowledge that the acts created a strong probability of death, even when those facts had been found beyond a reasonable doubt in the guilt phase of the trial. The law thus created the possibility of inconsistent verdicts at the guilt and sentencing phases of a trial, a prospect that ultimately was realized in Mack's case.

The question here is whether the 2001 sentencing court violated the principles of *Apprendi* when it sentenced Mack to an enhanced prison term in excess of forty years even though no jury had found beyond a reasonable doubt that any of the appropriate aggravating factors were present. Indeed, as Mack points out, a jury had just concluded that it could not find beyond a reasonable doubt that an aggravating factor existed, a conclusion that directly contradicted the 1981 trial court's finding that the murder was intentional and knowing. Mack argues that, because he refused to waive his right to a jury for sentencing purposes, he is entitled to have the facts relevant to his sentence determined by a jury under *Apprendi*.[2] If the 1981 trial court's findings on guilt

---

[2]  Mack's *Apprendi* challenge is based entirely on the contention that no jury found that he committed the murder with the requisite state of mind. He has not raised an *Apprendi* challenge to any of the other factual elements that must be proved to apply an enhanced sentence. For example, in order for the aggravating factor defined by section 9-1(b)(6) to be proved, the

(continued...)

were adequate to support the enhanced sentence of natural life, Mack contends, then his jury waiver was not knowing and voluntary. We turn to *Apprendi*.

In *Apprendi*, the Supreme Court considered whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense be made by a jury on the basis of proof beyond a reasonable doubt. *Apprendi*, 530 U.S. at 468. The defendant in that case, Charles Apprendi, fired bullets into the home of an African-American family that had recently moved into an all-white neighborhood. He was charged with shootings on four different dates as well as unlawful possession of various weapons, but none of the charges alleged that Apprendi acted with racial bias. Apprendi pled guilty to some of the charges, but the prosecution reserved the right to request an enhanced sentence (amounting to ten years more than the maximum would

---

[2] (...continued)

government must show that the defendant was at least eighteen years old, that the murdered individual was killed in the course of another felony, and that the victim was actually killed by the defendant and not by another party to the crime. The indictment does not specify Mack's age and does not allege whether Mack or one of his co-defendants actually pulled the trigger but Mack has waived any challenge to the manner in which the court determined those facts. In any case, Mack testified at the 2001 death eligibility hearing that he was the shooter and that he shot Mr. Kolar in the course of robbing the bank. Mack did not challenge the presentence investigation report that listed his date of birth as Sept. 4, 1955, and thus the uncontested record indicates that he was twenty-four years old at the time of the murder.

otherwise be) under the state's hate crimes law on the ground that one of the shooting counts was committed with a biased purpose. The trial court held a hearing to determine whether Apprendi committed the shooting with a racially biased purpose and concluded by a preponderance of the evidence that the crime was in fact motivated by racial bias. The court therefore enhanced Apprendi's sentence. Apprendi challenged the enhancement, arguing that the Due Process Clause requires that the finding of bias upon which the enhanced sentence was based must be proved to a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 468-70. The *Apprendi* Court agreed and held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

530 U.S. at 490.

The statutory maximum for murder in Illinois is forty years' imprisonment unless "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" or any of the aggravating factors are found to exist. Ill. Rev. Stat. Ch. 38, § 1005-8-1(a)(1) (1979). For *Apprendi* purposes, the relevant statutory maximum is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original). *See also Cunningham v. California*, 549 U.S. 270, ___, 127 S. Ct. 856, 868 (2007). Mack concedes that the 1981 trial court found beyond a reasonable doubt in the guilt phase of his trial that Mack possessed the state of mind necessary to apply the aggravating factor for felony murder. But because he reserved

the right to have a jury determine the facts necessary to set his sentence, he contends that *Apprendi* required the state court to submit the question of his *mens rea* to a jury. The State did so and the jury's verdict conflicted with the 1981 trial court's finding on Mack's state of mind.

Although Mack was entitled to this extra step under Illinois procedural law (at least in the death penalty context), *Apprendi* does not require it. All that *Apprendi* requires is that Mack be found guilty beyond a reasonable doubt of every element of the crime with which he was charged. *Apprendi*, 530 U.S. at 477. Those findings must be made by a jury unless the defendant has waived his right to a jury. *See Jones v. Hulick*, 449 F.3d 784, 790-91 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 940 (2007) (where the defendant waived his right to a jury at all stages of the proceedings, and the trial judge's finding of guilt beyond a reasonable doubt during the guilt phase of the trial encompassed fact-findings supporting an aggravating factor, an enhanced sentence based on that aggravating factor does not violate *Apprendi*). *See also White*, 454 F.3d at 706 (a guilty plea does not waive challenges to a sentence imposed after the plea is accepted unless the defendant consents to judicial fact-finding). *Cf. United States v. Brough*, 243 F.3d 1078, 1079-80 (7th Cir. 2001) ("It makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections . . . , or even whether they are scattered across multiple statutes[.]" Under *Apprendi*, the jury is the right decisionmaker unless the defendant elects a bench trial, and the reasonable doubt standard is the proper burden when a fact raises the maximum lawful punishment). Mack's state of mind at the time of the murder was both an element of

the crime and part of the aggravating factor sentencing scheme, and Illinois law thus put the same question at issue twice. The Constitution, however, does not require the State to prove Mack's state of mind twice. Once was enough for federal purposes. Mack waived his right to a jury for the guilt phase of the trial, where his state of mind was at issue and was determined beyond a reasonable doubt by the trial court. That finding was affirmed by the Illinois supreme court, and Mack never challenged any findings made during the guilt phase of his trial. For federal constitutional purposes, he thus waived his right to have a jury determine his state of mind, and there was no *Apprendi* violation. This is so because no *additional* fact-findings beyond those made in the guilt phase (or conceded by the defendant) were necessary to impose a sentence of natural life.

Mack contends that he did not understand his waiver to be so broad. Because Illinois law allowed the second bite at the *mens rea* apple for sentencing purposes, he claims he did not knowingly and voluntarily waive his right to have a jury determine the facts necessary to prove the aggravating factor. But this argument is sophistry. At the time Mack waived his right to have a jury determine his guilt, the trial judge was responsible for any fact-findings necessary to impose a sentence other than death. Unless Mack anticipated the holding of *Apprendi* by more than twenty years, and unless *Apprendi* gives Mack the right to have two triers of fact determine his state of mind (and we have just concluded it does not), he received the deal for which he bargained. That is, under Illinois law at the time, because he waived his right to a jury trial at the guilt phase, he waived his right to have a jury determine his state of mind for any sen-

tence other than death. As it turned out, that limited waiver saved Mack's life when the 2001 jury could not agree that an aggravating factor exists. The waiver as we apply it today is no broader than the waiver Mack signed nearly thirty years ago.

In sentencing Mack to natural life in prison, the 2001 trial court assumed it needed to find that the murder was accompanied by exceptionally brutal or heinous behavior or that one of the aggravating factors existed (specifically, the court found that Mr. Kolar was actually killed by Mack and that Mack killed Mr. Kolar with knowledge that the acts which caused the death created a strong probability of death). The court made its findings by a preponderance of the evidence. If the natural life sentence was founded solely on the findings of the 2001 trial court, the sentence likely would violate the principle of *Apprendi*. *See Cunningham*, 127 S. Ct. at 868 (because California's determinate sentencing law requires the judge to find additional facts, facts that are expressly *not* elements of the charged offense, by a preponderance of the evidence before applying an aggravating circumstance sentence enhancement, the scheme violates *Apprendi*). But the 1981 trial court had already concluded beyond a reasonable doubt that Mack acted intentionally and with knowledge that the acts which caused Mr. Kolar's death created a strong probability of death. Because Mack waived his right to have a jury make the *mens rea* findings in the guilt phase of his trial in 1981, and because Mack has conceded the other facts relevant to a natural life sentence (including his age, the fact that he was the shooter, and the fact that the murder occurred in the course of an armed robbery), the 2001 trial court did not violate the principle of *Apprendi* in

sentencing Mack to a term of natural life based on those same findings. We may not grant *habeas* relief unless the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court's adjudication of Mack's sentencing claim does not violate the principles of *Apprendi*; nor was it based on an unreasonable determination of the facts. Therefore we decline to grant Mack the requested relief. Because we have not deferred to Justice Hartigan's opinions in reaching this conclusion, we find it unnecessary to address Mack's claim that Justice Hartigan's participation in deciding his appeal violated his Fourteenth Amendment right to due process. Nor is it necessary to address Mack's arguments regarding double jeopardy because, under our holding, there will be no need to hold another sentencing hearing.

AFFIRMED.