2017 IL App (2d) 150565
No. 2-15-0565
Opinion filed January 26, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CF-76 |
| JEREMY R. MARES, | ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justice McLaren specially concurred, with opinion.
Justice Jorgensen dissented, with opinion.

**OPINION**

¶ 1    Defendant, Jeremy R. Mares, appeals from an order of the circuit court of Boone County granting the State's motion to dismiss his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) for relief from his conviction of armed violence (720 ILCS 5/33A-2(a) (West 2010)). Defendant argues that he is entitled to relief on the basis that the disposition of his direct appeal violated *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). We affirm.

¶ 2    Defendant was convicted following a bench trial. The armed-violence conviction was based on evidence that defendant committed the offense of aggravated battery while armed with

a "Category II weapon," namely a box cutter. See 720 ILCS 5/33A-1(c)(2) (West 2010). Defendant was also found guilty of several counts of aggravated battery based on the same incident, but the trial court did not enter a judgment of conviction on those counts. The trial court sentenced defendant to a 10-year prison term for armed violence. Defendant appealed, and the Office of the State Appellate Defender was appointed to represent him. Appointed counsel did not file an appellate brief. Instead, counsel filed an "Unopposed Motion for Summary Disposition," contending that the amount of court costs imposed by the trial court was excessive. The motion sought a refund of the overcharge. The motion stated that "counsel has read the complete record and has found no other issues to raise on appeal." On July 12, 2013, we granted the motion and refunded defendant $162. *People v. Mares*, No. 2-12-0493 (July 12, 2013) (minute order). Six days later we vacated that order and increased the refund to $200. *Mares*, No. 2-12-0493 (July 18, 2013) (minute order). The order stated, "THIS ORDER IS FINAL AND SHALL STAND AS THE MANDATE OF THIS COURT." On January 15, 2014, defendant filed a *pro se* petition under the Act. The trial court appointed counsel to represent defendant, and counsel amended the petition. The State successfully moved to dismiss the amended petition, and this appeal followed.

¶ 3    Defendant now argues that, by doing nothing more than moving for a summary disposition of his direct appeal, appellate counsel failed to act as an advocate for him. According to defendant, if there were no meritorious issues that could be raised on appeal, counsel should have moved to withdraw in accordance with the dictates of *Anders* and *Jones*. Otherwise, defendant argues, counsel was obligated to submit an appellate brief (as opposed to a motion for summary disposition). Defendant also argues that proper advocacy in a criminal appeal entails raising some error pertaining to either the adjudication of the defendant's guilt or the sentence

imposed. According to defendant, an error in the computation of costs pertains to neither of those subjects. Defendant contends, in essence, that we should reopen the judgment on direct appeal so that he may raise a new, supposedly meritorious issue: whether a box cutter is a dangerous weapon within the meaning of the armed-violence statute. Defendant also argues that, in the interest of judicial economy, we should decide that issue now, rather than granting defendant another appeal.

¶ 4 We preface our analysis of these arguments with a brief review of the legal principles governing proceedings under the Act:

"The Act provides a three-stage process for adjudicating postconviction petitions. At the first stage, the circuit court determines whether the petition is 'frivolous or is patently without merit.' [Citation.] The court makes an independent assessment as to whether the allegations in the petition, liberally construed and taken as true, set forth a constitutional claim for relief. [Citation.] The court considers the petition's 'substantive virtue' rather than its procedural compliance. [Citation.] If the court determines the petition is frivolous or patently without merit, the court dismisses the petition. [Citation.] If the petition is not dismissed, it will proceed to the second stage.

At the second stage, the court may appoint counsel to represent an indigent defendant, and counsel may amend the petition if necessary. [Citation.] The State may then file a motion to dismiss the petition. [Citation.] If the State does not file a motion to dismiss or if the court denies the State's motion, the petition will proceed to the third stage and the court will conduct an evidentiary hearing on the merits of the petition. [Citation.]" *People v. Hommerson*, 2014 IL 115638, ¶¶ 7-8.

To survive a second-stage motion to dismiss, the petition must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 5     To determine whether defendant's petition should have survived the State's motion to dismiss—*i.e.*, whether the petition should have proceeded to the third stage—we first examine the salient principles governing an indigent defendant's right to counsel in a criminal appeal. In *Douglas v. California*, 372 U.S. 353 (1963), the United States Supreme Court reiterated an earlier holding that "a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty." *Id.* at 355 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956)). Applying this principle, the Court invalidated a California rule of criminal procedure that made the appointment of counsel on appeal contingent upon a determination by the appellate court whether, upon a preliminary review of the record, the appointment of counsel would be helpful to the defendant or to the court. *Id.* The Court reasoned:

> "[U]nder [California's] present practice the type of an appeal a person is afforded in the District Court of Appeal hinges upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel should be provided. At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an *ex parte* examination of the record that the assistance of counsel is not required." *Id.* at 355-56.

The *Douglas* Court explained that "[t]here is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself." *Id.* at 357-58.

¶ 6    In *Anders* the Court relied, in part, on this principle as a basis for defining appointed counsel's role on appeal. The question arose where appointed counsel advised the appellate court, by letter, that he had concluded that there was no merit to the appeal and that he would not file a brief on the defendant's behalf. The appellate court refused the defendant's request for new counsel, leaving him to file a *pro se* brief. The *Anders* Court held that "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*." *Anders*, 386 U.S. at 744. The Court concluded that counsel was not acting as an active advocate when he submitted a "no-merit letter" to the appellate court. According to the Court:

"[Appointed counsel's] role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or

proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Id.* at 744-45.

See also *Jones*, 38 Ill. 2d at 385 (restating *Anders*'s requirements). When counsel is permitted to withdraw from an appeal without complying with *Anders*, reversal is automatic. *Penson v. Ohio*, 488 U.S. 75, 85-86 (1988). In this regard, an *Anders*-based claim of error differs from a claim of ineffective assistance of counsel based on the failure to raise a particular issue on appeal; the latter requires a showing that " 'the failure to raise that issue was objectively unreasonable, as well as a reasonable probability that, but for this failure, [the defendant's] sentence or conviction

would have been reversed.' " *People v. Mack*, 167 Ill. 2d 525, 532 (1995) (quoting *People v. Caballero*, 126 Ill. 2d 248, 270 (1989)).

¶ 7    Mindful of these principles, we consider defendant's argument that, in order to function as an advocate, appellate counsel must either submit an appellate brief or file a motion complying with *Anders* and *Jones*. Defendant contends that, because counsel here did neither, counsel did not function as an advocate. We disagree with the implied premise of defendant's argument: that a motion for summary disposition is a *categorically* unacceptable substitute for an appellate brief. Illinois Supreme Court Rule 23(c) (eff. July 1, 2011) authorizes the summary disposition of appeals without full briefing. That rule provides, in pertinent part, as follows:

> "The court may dispose of a case by summary order at any time after the case is docketed in the Appellate Court. The disposition may provide for dismissal, affirmance, remand, reversal or any combination thereof as appropriate to the case. A summary order may be entered after a dispositive issue has been fully briefed, or *if the issue has been raised by motion of a party* or by the court, *sua sponte*, after expiration of the time for filing a response to the motion or rule to show cause issued by the court." (Emphasis added.) *Id.*

Thus, in an appropriate case, counsel may use such a motion to achieve the full measure of relief that would be available in a fully briefed appeal. Would counsel in such a case be less of an advocate simply because he or she pursued summary relief via a motion under Rule 23(c) as opposed to filing a brief? Clearly, the answer is no.

¶ 8    We next consider defendant's argument that, unless counsel complies with *Anders* and *Jones*, he or she must raise some issue bearing on either the adjudication of guilt or the sentence imposed. Costs are considered a " 'collateral consequence' " of a conviction and are not punitive.

*People v. Jones*, 223 Ill. 2d 569, 581-82 (2006). Thus, in defendant's view, because the only error counsel raised on direct appeal related to costs, counsel did not act as an advocate. Certainly it seems fair to say that counsel does not act as an advocate if he or she raises an issue pertaining to costs (or some similar "collateral consequence" of a conviction) but neglects to raise a *meritorious* issue bearing on the adjudication of guilt or the sentence. But what is counsel to do if there is no such meritorious issue? Defendant would apparently have counsel withdraw pursuant to *Anders* and *Jones*. That would imply two things: (1) that, despite the existence of a meritorious issue pertaining to costs, such an appeal is "wholly frivolous" (*Anders*, 386 U.S. at 744) and (2) that the failure to challenge the adjudication of guilt or the sentence is tantamount to withdrawing from the appeal and thus requires compliance with *Anders* and *Jones*.

¶ 9     As we understand defendant's argument, both these propositions seem to flow from the definition of "judgment" set forth in section 102-14 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/102-14 (West 2014)). According to section 102-14, " '[j]udgment' means an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court." *Id.* Defendant's argument, as we understand it, is that appellate advocacy entails challenging the "judgment" as defined in this provision and that costs are outside the ambit of the judgment. We disagree. Section 102-14 makes clear that when there is an adjudication of guilt the judgment includes the defendant's sentence. It does not follow, however, that *only* the sentence is included. But even if it did, the Code's definition of "judgment" is applicable "except when a particular context clearly requires a different meaning." 725 ILCS 5/102-1 (West 2014). In the relevant context here, defendant's interpretation of "judgment" is untenable. Section 124A-5 of the Code expressly provides that "[w]hen a person is convicted of an offense *** the court shall enter

*judgment* that the offender pay the costs of the prosecution." (Emphasis added.) 725 ILCS 5/124A-5 (West 2014). In this context, "judgment" clearly includes not only the adjudication of guilt and the sentence pronounced by the court, but the costs of the prosecution as well. Inasmuch as defendant's argument rests on the proposition that appellate counsel did not challenge the judgment—and thus did not act as an advocate—the argument fails.

¶ 10   We thus decline to hold that appellate counsel does not act as an advocate unless he or she either (1) files a brief challenging the adjudication of guilt or the sentence imposed or (2) withdraws in accordance with *Anders* and *Jones*. In so holding, we reject the idea that raising only issues unrelated to the adjudication of guilt or the sentence is tantamount to withdrawing from the appeal. In cases where appellate counsel's advocacy is nonetheless wanting—*i.e.*, where the defendant does not receive the effective assistance of appellate counsel—the defendant may obtain relief under the Act by filing a postconviction petition (1) identifying a particular issue that could have been raised on direct appeal, (2) showing that the failure to raise that issue was objectively unreasonable, and (3) further showing a reasonable probability that, had the issue been raised, the defendant's conviction or sentence would have been reversed. See *Mack*, 167 Ill. 2d at 532; *Caballero*, 126 Ill. 2d at 270.

¶ 11   Because we reject defendant's *Anders*-based claim, we need not consider whether a box cutter is a "Category II weapon" for purposes of the armed-violence statute (720 ILCS 5/33A-1(c)(2) (West 2010)). We note that, even if the issue were directly before us, we would likely not resolve it in defendant's favor. The statute in question explains that a "Category II weapon" includes sundry firearms and spring guns, as well as any "knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, axe, hatchet, *or other deadly or dangerous weapon or instrument of like character*." (Emphasis added.) *Id.* As the statute's residual clause

indicates, a knife with a blade that is not at least three inches long can still be a deadly weapon. See *People v. Samier*, 129 Ill. App. 3d 966, 968-69 (1985). So, too, can a one-inch utility blade. See *People v. Westefer*, 169 Ill. App. 3d 59, 62 (1988). The box cutter defendant used was never recovered, but the statutory definition allows that an ordinary box cutter is just as deadly as any other knife or switchblade and therefore qualifies as a "Category II weapon." But more to the point, defendant's request that we consider the issue assumes that the asserted *Anders* violation (1) occurred and (2) requires that we reopen the judgment on direct appeal to consider new arguments. Because we conclude that there was no *Anders* violation, we reject defendant's request.

¶ 12    We acknowledge the concerns raised by our dissenting colleague; however, we disagree with the dissent's two core premises. First, an attorney cannot be expected to file both a motion to withdraw and a motion for summary disposition in the same case, as the two are mutually exclusive. Per *Anders* and *Jones*, a motion to withdraw invites the court to discharge appointed counsel from the burdens of advocacy on counsel's suggestion that there is no sound legal basis on which the defendant may seek any relief. A motion for summary disposition, however, is an attempt by counsel to secure at least some relief on defendant's behalf, which necessarily is advocacy.

¶ 13    We also disagree with the dissent's distinction between "primary" and "collateral" judgments, or rather the primary and collateral aspects of judgments. The distinction certainly advances the dissent's argument, but its overall utility is uncertain, perhaps even problematic. For example, if we summarily grant cost-only relief at the defendant's request and do not address the underlying conviction or sentence, have we failed to dispose of the appeal? Of course not. We trust that parties, especially represented parties, know what is best for them and how to ask

for it—and, as we have been repeatedly admonished, it is not our place to interfere with the attorney-client relationship or to say otherwise. See, *e.g.*, *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010) (citing *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). Instead, we adhere to the traditional approach that a judgment is a singular and largely indivisible judicial order. That is, in our view, just as a "[r]ose is a rose is a rose is a rose" (Gertrude Stein, Sacred Emily, in Geography and Plays 178, 187 (1922)), a judgment is a judgment is a judgment.

¶ 14    For the foregoing reasons, the judgment of the circuit court of Boone County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 15    Affirmed.

¶ 16    JUSTICE McLAREN, specially concurring:

¶ 17    I specially concur because I wish to comment on the dissent.

¶ 18    In paragraph 31, the dissent posits:

"Under the guidance of *Evitts*, I submit that it is appropriate to review whether an appeal is wholly frivolous based on whether counsel can raise any nonfrivolous challenge as to the defendant's liberty interests; if he cannot, the appeal is wholly frivolous and counsel must abide the requirements of *Anders*." *Infra* ¶ 31.

The dissent has raised a counterfactual conditional as the foundation for its assertion that a motion for summary disposition is improper in this case, where a liberty interest in not involved. The dissent's assertion that the appeal is wholly frivolous is based upon a distinction regarding primary and collateral judgments on appeal. See *infra* ¶ 32. The dissent must acknowledge that the collateral claim raised in defendant's motion for summary disposition was not frivolous,

because, if it was, defendant would not have been given relief on the claim. This disregard of reality is evident in the dissent's equating of a no-merit letter with a motion for summary disposition. A no-merit letter, in the context of *Anders*, meant no merit in *any* aspect of a potential appeal. However, the dissent determines that *Anders* applies only to the "primary judgment" that deals in liberty interests. There is nothing in *Anders* that enunciates or implies such a distinction. Furthermore, by attempting to make the distinction, the dissent is severing the collateral issues from the need to be considered in the context of *Anders*. Following the dissent's logic to its rational conclusion, if counsel determines that the "primary judgment" is wholly frivolous, there is no need to review the collateral issues, as *Anders* applies only to the primary judgment and "its liberty interests."

¶ 19    The dissent concludes in the same paragraph, "Whether the appeal is 'wholly frivolous' is a determination to be made by the court upon counsel's motion to withdraw." *Infra* ¶ 31. Historically, the motion to withdraw was to be reviewed in the context of the *entire* record ("*anything* in the record that might arguably support the appeal" (emphasis added) (*Anders*, 386 U.S. at 744)). The dissent would limit review to the record concerning "liberty interests."

¶ 20    The dissent differentiates between the "primary" and "collateral" components of the appeal based upon statutes. See *infra* ¶¶ 32-33. I find it intriguing that those statutes have never been considered for purposes of an *Anders* review. Apparently, all these years appellate counsel have been ineffective for failing to differentiate between primary and collateral aspects of the judgment. Likewise, apparently this court has been remiss because, in denying prior *Anders* motions, we have required counsel to brief the collateral aspects of an appeal.

¶ 21    This differentiation is arbitrary and incomplete and implies that collateral issues are inconsequential. The dissent never explains why the "collateral judgment" is limited to "only the

costs and fees assessed after and as a consequence of the judgment of conviction and sentence." *Infra* ¶ 32. There is no statutory definition of "collateral judgment"; the dissent distorts "Judgment for costs of prosecution" (725 ILCS 5/124A-5 (West 2014)) into "collateral judgment" and precludes any other collateral issue from its purview, as if no other collateral issues can arise from a trial court's judgment. This is not the case. For but one example, immigration consequences are not direct consequences of a criminal conviction. See *People v. Guzman*, 2015 IL 118749 ¶ 25. They are, rather, collateral to the trial court's judgment. However, this "collateral" issue is of such importance that "to be constitutionally effective criminal defense counsel must 'advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences' " and "noncitizen defendants who do not receive that advice from criminal defense counsel may be entitled to relief based on counsel's ineffective assistance if they can make the requisite showing of prejudice." *Id.* ¶ 33. Is this collateral issue not truly part of the "collateral judgment"? Further, is a challenge to "only" a collateral issue such as this a denial of a defendant's constitutional right to a direct appeal if no *Anders* brief is filed regarding the "primary appeal"? The dissent (see *infra* ¶¶ 29, 31) apparently would say yes.

¶ 22    I submit that this novel approach creates appeals within appeals. According to the dissent, there is an appeal from the primary judgment and an appeal from the collateral judgment, both contained in an overarching appeal. This supernumerary appeal, until now, was simply called "the appeal." In order to ensure that the supernumerary appeal is resolved, future dispositions would have to set forth that both primary and collateral issues have been disposed of.

¶ 23    The dissent claims that addressing only collateral issues precludes the court from considering any challenge to the curtailment of a defendant's liberty. See *infra* ¶ 39. I am not

aware of anything that precludes a defendant from seeking to appear *pro se* and attempting to raise any such challenge. The dissent applies *Anders* in such a manner that collateral issues are not covered, essentially removing the protection of *Anders* from portions of a defendant's right to a direct appeal.

¶ 24     The dissent submits its ideal resolution to the factual situation here:

    "As a final point, I submit that the debate between the majority and the dissent might have been avoided if appellate counsel, in the unopposed motion for summary disposition, had averred that defendant agreed to resolve his appeal by a motion for summary disposition raising only costs and without raising any challenge to his conviction or sentence—the primary judgment. *** Any defendant may file a motion to voluntarily dismiss his appeal. And, in the context of a motion for relief only as to a collateral issue, the defendant's consent to dispose of the remainder of the appeal without raising any challenge to the primary judgment is, effectively, a motion to voluntarily dismiss his appeal of the primary judgment. Alternatively, where the defendant does not consent to the voluntary dismissal of the appeal as to the primary judgment, counsel is left to file a motion to withdraw with the accompanying safeguards in *Anders* and, as an advocate for his client, the obligation to raise the error in costs through some means. Based on the record before us, it cannot be determined whether defendant consented to dispose of the appeal without raising a challenge to the primary judgment." (Emphasis omitted.) *Infra* ¶ 51.

I submit that this suggestion is fraught with problems. First, the statement is an enthymeme: it assumes that counsel has fully informed the client and that the client has made a fully informed consent. Second, it assumes that the consent given is given only as to what the dissent has

characterized as the "primary judgment" rather than the entire appeal. Third, it is an oxymoron: the defendant is essentially dismissing his appeal while receiving relief from the court. It would be more accurate to say that the defendant is waiving his right to a direct appeal of all other possible issues and seeking only the relief requested, regardless of any characterization. And here is the rub: if the defendant has the authority to do as the dissent proposes, and *Anders* does not apply to collateral issues (as the dissent must be read to hold), then counsel could relate what the dissent has proposed in a motion to withdraw, and there would be no *Anders* requirement at all. Counsel could file a motion to dismiss the appeal because counsel has conferred with the defendant and the defendant has consented to dismissing the appeal. And with that, there is no appellate review of the advocacy by counsel. With the defendant "effectively dismissing his appeal," the *Anders* requirement may be subverted without any appellate review. According to the dissent, even a no-merit letter is unnecessary, because the defendant has been informed that the case regarding the primary judgment lacks merit and the defendant does not object.

¶ 25    Additionally, the dissent leaves unsaid what counsel must disclose to a defendant in such a situation. If consent is to be meaningful, it must be an informed consent. The dissent would assist the bar if it would define what information must be conveyed to the defendant in order for the defendant to make an informed consent to dismiss the remainder of the supernumerary appeal. The dissent's proposal is an enthymeme where the premise that is not related, but presumed, is that the advice of counsel has satisfactorily informed the client. As with *Anders* motions, the benefit derived from informing the client is apprising the client of the status of his case. If the client decides that he wants to represent himself in his "primary" appeal, he may do so.

¶ 26    In conclusion, I believe that the dissent's *ratio decidendi* is based upon a counterfactual conditional. *Anders* was a decision wherein no matters were raised on appeal. The document filed in *Anders* was a no-merit letter that stated that there was no issue of merit to raise on appeal. The document filed in this case was an unopposed motion for summary disposition. The former sought no relief and asserted that there was no merit to the appeal. The latter sought and obtained relief on a ground contained in the appeal. The collateral issue, regardless of its nature and extent, was not "wholly frivolous" and, thus, the supernumerary appeal was not wholly frivolous. To decide, as the dissent would, that *Anders* applied here is to redefine the holding in *Anders* to say "*otherwise* wholly frivolous" or "wholly frivolous *as to non-collateral matters*." The dissent would literally bifurcate an appeal and all the underlying orders in support of the judgment into two classes. It would also relegate collateral issues to some unknown status beyond the purview of *Anders*. If that were done, the dissent would effectively change the definition of an appeal to "review of the primary judgment." In defining the appeal as relating only to the "primary judgment," the dissent would sever advocacy of collateral issues from appellate review. If a defendant consents to the "dismissal" of an appeal, it would be interesting to see how collateral issues are ever resolved if there is error or plain error.

¶ 27    JUSTICE JORGENSEN, dissenting:

¶ 28    I agree with the majority that an agreed motion for summary disposition pursuant to Rule 23(c) can be an acceptable, even a preferred, substitute for appellate briefing. *Supra* ¶ 7. When proper procedures are followed and safeguards in place, a summary disposition without formal briefing conserves resources and leads to a prompt resolution of the appeal. In fact, it has been a customary practice in this district for some time and such use is not what this case is about.

¶ 29    Rather, the heart of this case is whether counsel fulfills his obligation as effective appellate counsel where he challenges only a collateral issue. In other words, has a defendant been denied his constitutional right to a direct appeal where counsel challenges *only* the collateral judgment, avers that there are no other issues, thus implying that the appeal is otherwise wholly frivolous, and does not file an *Anders* motion? I believe that he has.

¶ 30    In order to satisfy the constitutional right to a direct appeal with effective assistance of counsel set forth in *Evitts v. Lucey*, 469 U.S. 387, 403-04 (1985), and in order to satisfy the advocacy requirements set forth in *Anders*, counsel must champion at least one nonfrivolous issue pertaining to the primary judgment, whether by brief or by (agreed) motion, or move to withdraw pursuant to *Anders*, thereby securing for his client all of the procedural safeguards that are inherent in a direct appeal of the primary judgment or that accompany an *Anders* motion.

¶ 31    There is no dispute that the application of *Anders* is triggered when counsel believes that the appeal is "wholly frivolous." The issue is, "When is an appeal 'wholly frivolous?' " Under the guidance of *Evitts*, I submit that it is appropriate to review whether an appeal is wholly frivolous based on whether counsel can raise any nonfrivolous challenge as to the defendant's liberty interests; if he cannot, the appeal is wholly frivolous and counsel must abide the requirements of *Anders*. In other words, an appeal is "wholly frivolous" when counsel is unable to articulate any nonfrivolous issue challenging the defendant's conviction or sentence. A viable challenge to erroneously assessed costs does not render an otherwise "wholly frivolous" appeal meritorious. Challenging *only* the collateral judgment, whether by brief or by (agreed) motion, simply does not satisfy the defendant's right to a direct appeal or counsel's duties as an advocate. Whether the appeal is "wholly frivolous" is a determination to be made by the court upon counsel's motion to withdraw.

¶ 32    I agree with the majority that the primary judgment (conviction and sentence (725 ILCS 5/102-14 (West 2014))) and collateral judgment (costs (725 ILCS 5/124A-5 (West 2014))) are components of the same appealed-from case. I disagree, however, that the appealed-from judgment cannot or should not be separated into its primary and collateral components *in the context of* considering whether the defendant's rights to a direct appeal and appellate advocacy have been satisfied. In my view, a direct appeal is a determination of whether the judgment of conviction and subsequent sentence was entered properly. As described below, the primary judgment is the judgment of conviction and sentence, as a result of which the defendant's liberty has been curtailed. The collateral judgment includes only the costs and fees assessed after and as a consequence of the judgment of conviction and sentence.

¶ 33    Primary and collateral judgments have been identified and labeled separately by the legislature and viewed discretely by the courts. These judgments have been given separate designations: " 'Judgment' " (725 ILCS 5/102-14 (West 2014)) lies under the heading for article 102, "General Definitions," and includes the "adjudication by the court that the defendant is guilty *** [and] the sentence pronounced by the court." "Judgment for costs of prosecution" (725 ILCS 5/124A-5 (West 2014)) lies under the heading for article 124A, "Liens and Costs," and discusses the costs of prosecution: "[w]hen a person is convicted *** the court shall enter judgment that the offender pay the costs of the prosecution." This separation by title and substance is an indication of the legislature's intent that the two components of a judgment on appeal are different types of judgments, entered for different purposes. 725 ILCS 5/102-14, 124A-5 (West 2014).

¶ 34    Primary and collateral judgments have been given different terminology and characterization by the supreme court, specifically, that a judgment for costs *is collateral to*, or *a*

*consequence of*, the judgment. *Jones*, 223 Ill. 2d at 581. Calling a judgment collateral, or consequential, indicates that the supreme court appreciates the difference between a primary judgment and its collateral components and has created a practical break between the primary judgment (conviction and sentence) and the remaining components of the judgment (fees and costs).

¶ 35    There is also a rudimentary difference here that cannot be overemphasized. Conceptually, the primary judgment is of a markedly different character than the collateral judgment, both at trial and on review. At trial, the primary judgment is reached following deliberation of facts and application of law by judge or jury, followed by further deliberation and the imposition of sentence. The collateral judgment is entered automatically, imposed by rote checking of prescribed boxes on a form, and in this context is limited to court costs and fees. Costs and fees represent the State's attempt to recoup the expenses of the prosecution as opposed to the penal nature of a fine. *Id.* at 582. On review, counsel's assessment of the former requires reading the entire record and analyzing complex legal considerations; counsel's assessment of the latter requires little more than reading a few pages of the record and engaging in a basic accounting exercise.

¶ 36    The primary and collateral judgments not only can, but *should*, be considered separately when examining whether a defendant's rights to a direct appeal and appellate advocacy have been satisfied. The primary judgment implicates a defendant's liberty interests, and the collateral judgment does not. There is a conscience-shocking disparity between the liberty interests implicated by a judgment of conviction and sentence of years in the Illinois Department of Corrections versus a judgment for costs (again, if a judgment for costs can be said to implicate liberty interests at all). At issue here, for example, is a Class X conviction of armed violence and

a 10-year sentence to the Department of Corrections versus less than a $200 overpayment in costs. A meritorious issue challenging the conviction or sentence addresses defendant's liberty interests and is of far more import than reckoning the ledger of costs.

¶ 37    Defendant is entitled to a review of the propriety of his conviction and sentence. In other words, defendant is entitled to a review of the deprivation of his liberty interests, not merely his debt for costs. "In establishing a system of appeal as of right [with effective assistance of counsel], the State had implicitly determined that it was unwilling to curtail drastically a defendant's *liberty* unless a second judicial decision maker, the appellate court, was convinced that the *conviction* was in accord with law." (Emphases added.) *Evitts*, 469 U.S. at 403-04. This sentence contains two important points: (1) a defendant's right to a direct appeal with effective assistance of counsel derives from the curtailment of his liberty and (2) the court, not counsel, must decide on direct appeal whether the defendant's liberty was rightfully curtailed. Indeed, process requirements generally develop to guard against the wrongful deprivation of a right.

¶ 38    The procedure sanctioned by the majority subverts the *Evitts* policy underlying the right to a direct appeal, specifically, that a second judicial decision-maker review whether the curtailment of a defendant's liberty was proper. Where counsel challenges only the collateral judgment, he precludes the court from considering on direct appeal *any* challenge to the curtailment of the defendant's liberty. Here, for example, counsel challenged only the collateral judgment, arguing an improper assessment of court costs. Counsel further stated in his unopposed motion for summary disposition that "[u]ndersigned counsel has read the complete record and he has found no other issues to raise on appeal." Properly declining to act as an advocate, this court reviewed only the collateral judgment to the exclusion of the primary or

liberty-interest judgment. The flaw, as raised by defendant's petition, is that under this process this court has never reviewed any issue regarding defendant's primary judgment.

¶ 39    Under our current procedure, this court accepted counsel's conclusory statement that there were no other issues to raise, which, taken at face value, meant that counsel had identified no "nonfrivolous" issues regarding the primary judgment. In such a circumstance, the appeal as to defendant's liberty interests was, according to counsel, "wholly frivolous." In a manner analogous to the patently ineffective no-merit letter, counsel, *not the court*, determined that defendant's liberty was rightfully curtailed and that defendant was entitled to no further review of his conviction or sentence. Counsel's summary resolution of the appeal precluded the court from considering on direct appeal any challenge to the curtailment of defendant's liberty. In contrast, requiring counsel to raise at least one challenge against the primary judgment, or move to withdraw pursuant to *Anders*, ensures that a second judicial decision-maker, this court, will review on direct appeal the curtailment of a defendant's liberty. To hold otherwise is arguably to follow the letter of the law but stands the spirit of the law on its ear.

¶ 40    The procedure approved by the majority also subverts the policy underlying *Anders*, specifically that defendants receive effective appellate advocacy. *Anders*, 386 U.S. at 744-45. Submitting an *Anders* motion is an act of advocacy. *Id.* Consider the appeals of two defendants for whom there are no nonfrivolous issues regarding their liberty interests. The only difference between them is that one was erroneously assessed costs. Under the majority position, the defendant who has been assessed the correct costs, in other words who has no issues regarding the collateral judgment, is given the benefit of the *Anders* procedure before counsel may withdraw. In that case, *the court*, not counsel, will ultimately determine whether the appeal is wholly frivolous and whether the motion to withdraw should be granted. The similarly-situated

defendant who has been assessed erroneous costs, an easily-correctable overcharge, does not receive the benefit of the *Anders* procedure. Rather, counsel may summarily aver that the defendant is entitled to a correction of costs and that there are no nonfrivolous issues to be raised challenging the primary judgment. This is no better than the no-merit letter outlawed in *Anders*.

¶ 41    Counsel secures significant procedural safeguards for his client when he moves to withdraw pursuant to *Anders*. I name just a few of those safeguards: (1) the guarantee that a "court—not counsel" will decide whether there are no nonfrivolous challenges to be made on direct appeal against the judgment (*id.* at 744), which, pursuant to *Evitts*, in this context means the primary judgment; (2) demonstrative evidence, presented to the court, that an attorney thoroughly reviewed the record *and understood the applicable law* before he or she moved to withdraw (see *In re Brazelton*, 237 Ill. App. 3d 269, 271 (1992) (the court denied an *Anders* motion that demonstrated a superficial review of the record and a misunderstanding of the applicable law); *In re Alexa J.*, 345 Ill. App. 3d 985, 990 (2003) (where an attorney files an inadequate *Anders* brief, the remedy is not to deny the *Anders* motion, but for the attorney to rethink his position and either amend the *Anders* motion or file an appellate brief)); (3) notice of counsel's motion to withdraw and the basis thereof, together with the opportunity for the defendant to object to the attorney's position or move to proceed *pro se*; (4) the opportunity for the defendant and the court to benefit from the attorney's discussion of the case, which may aid the defendant and the court in identifying a nonfrivolous issue (see *Brazelton*, 237 Ill. App. 3d at 272 (the defendant should have the benefit of a detailed memorandum that discusses all aspects of the case with citation to correct law before objecting to the motion to withdraw or moving to proceed *pro se*, and the court should have the benefit of legal argument before determining the frivolity of potential claims)); and (5) the opportunity for *timely* access to justice and procedure,

in other words, a review of the deprivation of the defendant's liberty interests in the first instance—on direct appeal.

¶ 42    It is worthy of note that this court does deny *Anders* motions where we disagree with counsel's assessment of "wholly frivolous." It is troubling here that, where counsel did not place a single issue regarding conviction and sentence before us, we are left to conclude on faith, without more, that counsel understood the issues and the law and correctly concluded that the appeal was wholly frivolous. By accepting counsel's bald averment that there were no other issues, we have failed to be the second judicial decision-maker to review the deprivation of defendant's liberty interests.

¶ 43    It is my position that, because counsel here violated *Anders*, there is no room to discuss alternative procedures that may occur after the court's disposition of the direct appeal. It is disingenuous to suggest that, "even if counsel violated *Anders*, there are sufficient procedural safeguards against the wrongful deprivation of defendant's liberty available at later stages." Defendant had the right to a review of the deprivation of his liberty in the first instance, on direct review. No subsequent procedure can ameliorate the denial of that right.

¶ 44    In contrast, the majority posits that counsel did *not* violate *Anders*, that defendant, who was credited for the cost overage, received adequate resolution of his appeal, and that, if an issue was missed by counsel and thus not reviewed by the court, procedural safeguards available at later stages suffice.

¶ 45    I disagree and, in response, address the inadequacy of requiring a defendant to rely on postconviction proceedings for the opportunity to raise his *first* challenge to the primary judgment, as proposed by the majority (*supra* ¶ 10). That a defendant would have to fend entirely for himself to craft a challenge to the primary judgment and wait years to do so makes a

postconviction proceeding a poor safeguard against the wrongful deprivation of the defendant's liberty. In stark contrast to the benefit of the *Anders* procedure, no appellate court reviews any aspect of the primary judgment, leaving the defendant with a broad, and likely overwhelming, set of issues to consider. The defendant is not assured, in the form of a detailed memo, that an attorney reviewed his conviction and sentence with an appropriate level of knowledge and understanding of the law. The defendant must identify potential issues to initiate a postconviction proceeding without the help of such a memo. Further, in this postappeal posture, he has the additional obstacle of proving ineffective assistance of appellate counsel, making the avenue to relief all the more arduous. Finally, and perhaps most compelling, assuming that the defendant gets to stage two of postconviction proceedings, the defendant is entitled only to *reasonable assistance* of counsel, not the higher level of advocacy—*effective assistance*—which he should have enjoyed on direct appeal. In short, his access to justice and process is delayed, he is hobbled by the lack of appellate review, he is at a distinct disadvantage with at most only reasonable assistance of counsel in bringing *for the first time* any claim of error in his conviction and sentence, and, if his argument is winning, he has lost years of his life in prison.

¶ 46    Reliance on a *pro se* petition for rehearing as an adequate guard against the wrongful deprivation of a defendant's liberty interests is equally misguided. This procedure also violates the *Anders* dictate that a defendant should not shift for himself against the judgment, which, per *Evitts*, in this context means the primary judgment. It is unlikely, if not impossible, that a defendant, not given an invitation to challenge his attorney as in the *Anders* procedure, would have the wherewithal to swiftly take such a creative approach. We cannot expect a defendant to scour the record and craft, from inception, his own challenge to the primary judgment within 21 days.

¶ 47   Further support for my position is found in what is required to prove ineffective assistance of appellate counsel: "[a] defendant who contends that appellate counsel rendered ineffective assistance, *e.g.*, by failing to argue an issue, must show that the failure to raise that issue was objectively unreasonable and that, but for this failure, defendant's *conviction or sentence* would have been reversed." (Emphasis added.) *People v. Richardson*, 189 Ill. 2d 401, 412 (2000). This standard, turning on counsel's handling of challenges to the conviction and sentence, leads to the inescapable conclusion that counsel's handling of costs cannot conclusively establish the constitutional sufficiency of his advocacy. Counsel cannot fulfill his constitutional duty to advocate for his client by challenging only costs; he must challenge the primary judgment with an appellate brief or a motion for summary disposition or move to withdraw pursuant to *Anders*.

¶ 48   I realize that in some cases this position might place an additional obligation on appellate counsel. Counsel who notices an error as to costs, the collateral judgment, but believes that the appeal is otherwise wholly frivolous will have to both (1) pursue a remedy as to costs, presumably by an agreed motion, *and* (2) move to withdraw pursuant to *Anders*. I stress that the extra burden here is the agreed motion concerning costs, not the *Anders* motion. Again, in my view, the court, not counsel, must review the curtailment of the defendant's liberty (*Evitts*), and the defendant is not to shift entirely for himself in raising a challenge to the curtailment of his liberty (*Anders*). This requires in every case the filing of one of three alternatives that *address the primary judgment*—the defendant's liberty interests: (1) a brief, (2) a motion for summary disposition, or (3) an *Anders* motion. The extra burden of raising an easily-correctable collateral error as to costs is a small one.

¶ 49    In my view, the majority does not offer a satisfactory explanation as to why the primary and collateral judgments *must* be treated as parts of an indivisible whole when considering whether an appeal is wholly frivolous or whether appellate counsel fulfilled his duties as an advocate. I infer that the majority's concern lies in preserving the distinction between noncompliance with *Anders* and a *Strickland* ineffective-assistance claim based on failure to raise a meritorious issue. *Supra* ¶ 6. In fact, I agree with this distinction. We require counsel to raise at least one nonfrivolous issue or file an *Anders* motion. We do not usurp counsel's role to choose which issues to raise. We do not proactively review the issues that counsel could have raised. The majority creates a firm cutoff: so long as counsel champions at least one nonfrivolous issue *pertaining to either the primary or the collateral judgment*, counsel need not file an *Anders* motion and the court does not review the case for other issues of potential merit. If counsel misses an issue of merit, then the defendant has a postconviction ineffective-assistance claim. I, too, would create a firm cutoff: so long as counsel champions at least one nonfrivolous issue *pertaining to the primary judgment*, that is at least one nonfrivolous issue other than costs and fees, counsel need not file an *Anders* motion and the court does not review the case for other issues of potential merit. If counsel misses an issue of merit, then the defendant has a postconviction ineffective-assistance claim. Both approaches preserve the distinction between noncompliance with *Anders* and a standard ineffective-assistance claim. However, only my approach satisfies the *Evitts* policy that the court, not counsel, consider on direct appeal a challenge to the curtailment of the defendant's liberty.

¶ 50    In sum, I would review whether an appeal is wholly frivolous based on whether counsel can raise a nonfrivolous challenge as to the defendant's liberty interests; if he cannot, the appeal is wholly frivolous and counsel must abide the requirements of *Anders*. This remains steadfast

regardless whether there is an error in the judgment for fees and costs. Again, an error in costs does not transform an otherwise wholly frivolous appeal into one in which a meritorious claim exists under *Evitts*.

¶ 51    As a final point, I submit that the debate between the majority and the dissent might have been avoided if appellate counsel, in the unopposed motion for summary disposition, had averred that defendant agreed to resolve his appeal by a motion for summary disposition raising only costs and without raising any challenge to his conviction or sentence—the primary judgment. The defendant's agreement is his consent to forgo a challenge to the deprivation of his liberty in his direct appeal, not to the resolution of the collateral matter set forth in the motion for summary disposition. *Any defendant may file a motion to voluntarily dismiss his appeal*. And, in the context of a motion for relief only as to a collateral issue, the defendant's consent to dispose of the remainder of the appeal without raising any challenge to the primary judgment is, effectively, a motion to voluntarily dismiss his appeal of the primary judgment. Alternatively, where the defendant does not consent to the voluntary dismissal of the appeal as to the primary judgment, counsel is left to file a motion to withdraw with the accompanying safeguards in *Anders* and, as an advocate for his client, the obligation to raise the error in costs through some means. Based on the record before us, it cannot be determined whether defendant consented to dispose of the appeal without raising a challenge to the primary judgment.

¶ 52    I note that such language has recently been included in similar motions for summary disposition. In People v. Lambert, No. 2-15-0925, counsel filed an unopposed motion for summary disposition, seeking only the removal of a fee for a second DNA sample and stating that "*[c]ounsel has spoken to the defendant, and he has agreed to dispose of his appeal in this summary motion without filing a brief [or motion] raising any other issues.*" (Emphasis added.)

This is a proper procedure. The portion of the unopposed motion for summary disposition addressing the DNA fee, the collateral judgment, is resolved while this court retains jurisdiction. The balance of the motion is, in effect, a motion to voluntarily dismiss the appeal as to the primary judgment, which, if granted, ultimately divests this court of jurisdiction.

¶ 53    I briefly address the criticisms against my dissent. The majority states: "First, an attorney cannot be expected to file both a motion to withdraw [as counsel] and a motion for summary disposition in the *same case*, as the two are mutually exclusive." (Emphasis added.) *Supra* ¶ 12. The majority unfairly imposes a premise inconsistent with my position to attack the logic of my position. Again, I believe that the case *can* be considered in two parts, primary and collateral, for the limited purpose of evaluating a defendant's right to a direct appeal and advocacy. Therefore, under my view of the case, it is not illogical for an attorney to file a motion for summary disposition as to the collateral judgment and a motion to withdraw as counsel as to the primary judgment.

¶ 54    The special concurrence criticizes the practical break between primary and collateral judgments, *i.e.*, between the aspects of the judgment that implicate a defendant's liberty interests and those that reflect rote bookkeeping actions. *Supra* ¶ 21. It notes that some collateral matters, such as immigration status, implicate a defendant's constitutional rights. *Supra* ¶ 21. This point is outside the scope of our present debate concerning *de minimis* costs. Future courts will have to decide whether an issue, even if referred to as collateral, can satisfy an attorney's duty to raise at least one challenge to the deprivation of the defendant's liberty. (Unlike a judgment for costs, a defendant's immigration status *does* implicate a liberty interest. Also unlike a judgment for costs, it is not guaranteed to be noted in the trial record. Whether the issue may be challenged on direct appeal, or in postconviction proceedings, depends on the trial record.)

¶ 55     The special concurrence also criticizes the alternative solution set forth in paragraph 51. *Supra* ¶¶ 24-25. I want to place in context that this is an alternative solution. Again, any defendant may file a motion to voluntarily dismiss an appeal.

¶ 56     For the reasons stated, I would conclude that defendant has made a substantial showing of a constitutional deprivation, reverse the second-stage dismissal, and remand for further proceedings.